RECEIVED
DEC 27 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SHARON D. PETTIS | CIVIL ACTION NO. 04-2484 |
| versus | JUDGE HICKS |
| | **REFERRED TO:** |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

**Introduction**

Sharon Pettis ("Plaintiff") was 38 years old when ALJ Charles Lindsay denied her third unsuccessful application for disability benefits. Plaintiff has a twelfth grade regular education and past work experience that includes employment as a commercial cleaner, cafeteria attendant and nurse's aide. Her primary complaints relate to asthma and pain in her hips, back and upper extremities.

The Appeals Council found no basis to review the ALJ's decision that Plaintiff is not disabled under the regulations. Plaintiff then filed this civil action seeking the limited judicial review that is available under 42 U.S.C. § 405(g). Both parties filed written consent to have the case decided by a magistrate judge, and the case was referred to the undersigned pursuant to 28 U.S.C. § 636(c) and a standing order of the district court regarding social security cases.

## Summary of the ALJ's Decision

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff was not working (step one) and suffered from chronic obstructive pulmonary disease, asthma, obesity, fibromyalgia, degenerative disk disease and bilateral carpal tunnel syndrome, impairments that are severe within the meaning of the regulations (step two) but not severe enough to meet or equal a listed impairment (step three).

After conducting a detailed discussion of the medical evidence and assessing Plaintiff's credibility, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work activity with occasional balancing, stooping, kneeling, crouching and crawling; no climbing ladders, etc.; no working at heights, operating heavy automotive equipment or around dangerous machinery; no working around high concentrations of fumes, etc.; and no constant repetitive movement of the hands/wrists.

Vocational expert ("VE") Joni Crayton was asked to consider an individual of Plaintiff's age, education and past work experience with an RFC as determined by the ALJ. The VE testified that such a person was capable of performing Plaintiff's past relevant work (step four) as a cafeteria attendant. The VE added that such a person would also be capable of performing the demands of other jobs (step five) such as order clerk or charge account

clerk. The ALJ accepted that testimony and found that Plaintiff was not disabled.

**Issues on Appeal**

Plaintiff complains that the ALJ erred in ignoring, without adequate explanation, the opinions and findings of Dr. Marius McFarland, a treating physician. She also complains that there is not substantial evidence to support the finding that she can do her past work.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Issue One: Treating Physician**

The medical evidence includes records and tests performed by a number of physicians and reflect a long history of asthma. Plaintiff has complained of shortness of breath in recent years, but testing by Dr. Robert Long (a pulmonary specialist) and Dr. Robert Holladay could not determine a cause for the complaints, and Dr. Holladay opined that testing indicated the problems were not secondary to her asthma. See, e.g., Tr. 310 and 259.

Page 3 of 10

Plaintiff saw Dr. McFarland in November 2002 for complaints of chronic pain and swelling. All lab tests were "absolutely normal" and Dr. McFarland said he was unsure of the source of Plaintiff's complaints. Plaintiff had a decreased range of motion in her legs due to severe edema, stiffness of her joints and multiple trigger points. Dr. McFarland's assessment was fibromyalgia, edema of unknown etiology, and hypertension. Tr. 449. Plaintiff returned less than a week later with numerous somatic complaints and complaints of shortness of breath. Dr. McFarland found that Plaintiff had "some reactive airway disease." Tr. 448. Plaintiff continued to see Dr. McFarland on several occasions over the following months with similar complaints. The reports of those visits frequently state that Plaintiff was doing better or "much better" with the exception that she said she gets out of breath when she walks and exerts herself. Tr. 416-47.

Plaintiff had left carpal tunnel release surgery in February 2004. She testified that she would have surgery on the right side in April 2004. The ALJ stated in his May 2004 decision that Plaintiff had received surgery on both hands, so her condition was not expected to satisfy the twelve-month durational period. He nonetheless factored it into the RFC (no constant repetitive movement of the hands/wrists). Tr. 21 & 23.

Dr. Mary McWilliams evaluated Plaintiff in early 2003. Plaintiff told Dr. McWilliams that no accident or illness started her pain, but it started in her hands and gradually spread to other locations. She said that standing or walking increased her pain, and she has to lean on her shopping cart to walk around a grocery store. Plaintiff's only reported exercise was

walking, but she said that it had become painful so she walked less. Physical therapy was difficult, but she said it was making her walk a little more easily. Plaintiff had normal muscle power in her extremities and a normal gait and no ataxia. Plaintiff exhibited some odd sensory losses, which the physician thought might be caused by sleeping in a chair. Plaintiff had restricted flexion in her hips due to shortened hamstring muscles. An MRI of the lumbar spine showed degenerative disk disease with mild encroachment. The diagnosis was possible cervical spine stenosis with minimal symptoms, fibromyalgia, possible sleep apnea, and severe hamstring contracture (possibly caused by sleeping in a chair). Dr. McWilliams recommended that Plaintiff continue physical therapy until her range of motion at the hip returned to normal, lose 50 to 80 pounds, and treat her pain as needed until she could sleep through the night in a bed. Dr. McWilliams predicted that Plaintiff would "do well in the long run" as she lost weight and regained her posture. Tr. 372-74.

None of the evidence discussed thus far or other medical evidence is in any significant conflict with the RFC found by the ALJ. The evidence indicates that Plaintiff certainly has several medical problems, but she is far from bedridden. An Activities of Daily Living Form completed by Plaintiff is, similarly, indicative of several problems, but Plaintiff said that she prepares light meals daily, cleans her house in about three hours (although it used to take only one hour), and can drive a car. She shops for an hour about once a month but sometimes needs help. She attends church on Sunday when she feels well. She requires help to mop, sweep and clean the bathtub. Tr. 151-58.

Plaintiff testified at the hearing that her daughter drives her to the grocery store. She said she could sit without difficulty for maybe 15 or 20 minutes before her hip hurts. Tr. 43. She estimated that she could stand no more than 15 or 20 minutes, for the same reason. She believed that she could lift maybe two pounds. Tr. 44.

In June 2003, Dr. Blain Pittman, a general surgeon acting as a state agency physician, reviewed Plaintiff's medical records. He completed an RFC assessment form that indicated his opinion that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds, and could stand and/or walk (with normal breaks) for at least two hours in an 8-hour work day. He also indicated that Plaintiff could sit for a total of about six hours per day. He noted in his written comments Plaintiff's difficulty walking, and he assigned a limitation in the ability to push or pull with the lower extremities. Tr. 395-402.

The next month, July 2003, Dr. McFarland completed an RFC form that indicated extraordinary limitations. It is the limitations set forth in this assessment that Plaintiff argues the ALJ erred in discounting. Dr. McFarland opined that, in an 8-hour work day, Plaintiff could (1) sit for 15 minutes at a time for a total of *one* hour and (2) was limited to standing or walking for *five minutes* total in a work day. Dr. McFarland apparently believed that Plaintiff would be required to lie down or assume some other posture for the remaining six hours and 55 minutes, but that is not explained. He added that Plaintiff could occasionally lift up to ten pounds, but no more, and she could occasionally bend or crawl but never engage in other postural activities such as kneeling or reaching overhead. He indicated that Plaintiff
Page 6 of 10

could never tolerate exposure to any of the listed environmental factors, including noise and temperature changes, but he did not explain the basis for those restrictions. Tr. 458-61.

Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990). Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions that have been recognized include statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Scott, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id. See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ wrote that he considered Dr. McFarland's assessment, but he deemed it "too restrictive when considering all the objective evidence." Tr. 20. That other evidence was discussed in great detail in the written decision. The ALJ did not point out along the way how each of those items conflicted with Dr. McFarland's assessment, but the conflicts are rather obvious. The assessment form indicates a person who is virtually bedridden. Plaintiff obviously has serious problems and significant limitations – that were recognized by the

ALJ's RFC – but none of the medical reports from Dr. McFarland or the other treating physicians supports the extraordinary limitations indicated on the assessment form. The ALJ's decision describes those competing first-hand medical records that undermine Dr. McFarland's assessment and provide good cause for his evaluation of the weight to be afforded the assessment form. The presence of the competing first-hand medical evidence made it unnecessary for the ALJ to conduct the more detailed Newton analysis. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003); Nall v. Barnhart, 78 Fed. Appx. 996 (5th Cir. 2003).

**Issue Two: Past Work**

The VE testified that a person with Plaintiff's RFC and other vocational factors could perform her past work as a cafeteria attendant. Plaintiff argues that the hypothetical assumed an RFC for light work, subject to some restrictions, but that is incorrect because she is incapable of performing the walking and standing requirements of light work. This argument is, in essence, an attack on the RFC that underlies the question posed to the VE.

Social Security Ruling 83-10 explains that the regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. The primary difference between sedentary work, which requires standing or walking for no more than about two hours per work day, is that the full range of *light* work requires standing or walking, off and on, for a total of approximately *six* hours per work day. Dr. McFarland's discounted assessment stated that Plaintiff could stand/walk for only five

minutes. Dr. Pittman's assessment estimated that Plaintiff could do so for at least two hours per day, which is consistent with sedentary but not light work. The ALJ legitimately discounted Dr. McFarland's assessment and stated that Dr. Pittman's assessment was "well supported and is not inconsistent with the findings" of the ALJ. Tr. 22. But even Dr. Pittman's assessment does not appear to permit the standing/walking required by light work, and the various limitations the ALJ added to the basic RFC do not include any that would address that limitation.

Any error in this respect is rendered harmless by the fact that Dr. Pittman's standing/walking assessment is consistent with sedentary work, and the VE opined in the alternative regarding a person with an RFC for sedentary work with the same other limitations contained in the ALJ's RFC. The VE testified that such a person could perform the demands of order clerk or charge account clerk, both of which are sedentary jobs that do not require constant use of the hands and wrists. Tr. 50-53. Accordingly, the ALJ's alternative step five conclusion that Plaintiff can perform other available work is supported by substantial evidence.

**Conclusion**

Plaintiff obviously suffers from a number of serious medical problems, and the ALJ recognized that those limitations significantly affect her RFC. He did not, however, find that Plaintiff's limitations were so severe as to preclude her from all work activity within the meaning of the regulations. His analysis and findings may be subject to debate among

reasonable persons, but the record includes substantial evidence to support his decision and requires that it be affirmed pursuant to Section 405(g). Accordingly, a judgment will be entered affirming the Commissioner's decision to deny benefits.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 27th day of December, 2005.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE